**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENNETH LEE LONG, JR.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.    20-cv-6336** |
| | : | |
| **KILOLO KIJAKAZI,**[1] | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                              **April 22, 2022**

Plaintiff Kenneth Lee Long, Jr., brought this action seeking review of the Commissioner of Social Security Administration's decision denying his claim for Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 13) is **DENIED**.

I.    **PROCEDURAL HISTORY**

Plaintiff protectively filed for SSDI and SSI, alleging disability since July 9, 2010, due to depression, bipolar disorder, posttraumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), an incorrectly healed broken arm and back and head injuries.  (R. 191-98, 217).  Plaintiff's applications were denied at the initial level, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 115-24).  Plaintiff, represented by counsel, and a

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she has been substituted for Andrew Saul as the Defendant in this case.

vocational expert (VE) testified at the July 17, 2019 administrative hearing.  (R. 47-67).  On August 1, 2019, the ALJ issued a decision unfavorable to Plaintiff.  (R. 12-28).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on October 16, 2020, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On December 16, 2020, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania.  (Compl., ECF No. 1).  On July 15, 2021, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 13).  On August 17, 2021, the Commissioner filed a Response.  (Resp., ECF No. 16).  Plaintiff filed a Reply on August 31, 2021.  (Reply, ECF No. 15).  On October 26, 2021, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Consent Order, ECF No. 5).

## II.     FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on July 9, 1990, and was 20 years old on the alleged disability onset date.  (R. 22).  He graduated from high school.  (R. 22, 218).  Plaintiff previously worked as a groundskeeper, busboy, electrician assistant and laborer.  (R. 22, 219).

### A.     Medical Evidence[2]

On July 19, 2014, Plaintiff presented to his primary care physician, Jeffrey Jones, D.O., of Topton Family Practice Associates in Topton, Pennsylvania, with complaints of anxiety and related insomnia.  (R. 327).  Dr. Jones prescribed Xanax (alprazolam).  (*Id.*).  At a follow up visit

---

[2]  Plaintiff's Request for Review does not concern the ALJ's findings regarding his lack of physical impairments.  Accordingly, the Court will not address these issues at this time.

one week later, Plaintiff reported doing well with Xanax.  (R. 329).  In an October 27, 2014

Medical Source Statement of Ability to Do Work-Related Activities, Dr. Jones recorded almost[3]

no physical limitations and the following mental limitations: mild limitations in understanding,

remembering and carrying out simple instructions and responding appropriately to usual work

situations and to changes in a routine work setting; moderate limitations in the ability to make

judgments on simple work-related decisions and to interact appropriately with supervisors and

coworkers; and marked limitations in understanding, remembering and carrying out complex

instructions, the ability to make judgments on complex work-related decisions, and in interacting

appropriately with the public.  (R. 355-60).  Plaintiff returned on February 17 and August 17,

2015, for checkups and for his anxiety, although he reported doing "decent" or "well" with

Xanax.  (R. 338, 341).  At a March 6, 2017 visit for anxiety, Plaintiff was still doing "well,"

albeit with "a hard time concentrating with all the detail of what[ ] he is into."  (R. 347).  He

continued to do well and began seeing a psychiatrist, as reported at a July 31, 2017 visit.  (R.

350).

       After a routine examination on March 6, 2018, Plaintiff again returned to Dr. Jones on

April 3, 2019, for a checkup, anxiety, depression and focus issues.  (R. 588, 592).  Dr. Jones

prescribed buspirone, in addition to the oxcarbazepine Plaintiff had already been prescribed.  (R.

590-91).  At a May 1, 2019 visit for anxiety and headaches, Plaintiff reported stopping the

buspirone.  (R. 581).  Plaintiff visited Dr. Jones for anxiety again on May 29, 2019, and the notes

from this visit indicate that he had been prescribed Trileptal as a mood stabilizer.  (R. 577).

Throughout his visits with Dr. Jones, Plaintiff was oriented to time, place, person and situation

---

[3] Dr. Jones noted that Plaintiff could only "frequently," as opposed to "continuously,"
lift over 50 pounds and that he could never tolerate exposure to unprotected heights.  (R. 355-
57).

and displayed appropriate mood and affect and normal insight and judgment.  (R. 328, 331, 336, 340, 343, 349, 352, 578-79, 582, 586, 589, 593).

The record also contains a letter and Psychiatric/Psychological Impairment Questionnaire from Dr. Jones dated July 11, 2019.  In the letter, he writes: "Disability was discussed during a visit in 2014 but . . . I completed a form that did not identify any disabling physical issues/mental health issues."  (R. 619).  In the Questionnaire, Dr. Jones indicated that Plaintiff has persistent or generalized anxiety, difficulty thinking or concentrating, easy distractibility, and insomnia.  (R. 623).  He checked no boxes indicating any behavioral and social, thought, perception and reality or fear and paranoia problems.  (*Id.*).  Nor did he check any boxes in the portion of the form regarding Plaintiff's mental limitations.  (R. 625).

Additionally, Plaintiff had treatment at Cove Forge Behavioral Health System (Cove Forge).  On June 14, 2017, Plaintiff underwent a psychiatric consultation there.  (R. 504-05).  He had clear and normal speech, a neutral mood, appropriate affect, intact recent memory, fair judgment, and good impulse control, and he was oriented to time, place, person, and situation. (R. 505).  On June 22, 2017, he was admitted to Cove Forge for dual diagnosis treatment of substance use disorder (primarily misuse of benzodiazepines and cannabis) and mental health issues (primarily anxiety, depression and PTSD).  (R. 481, 485).  His drug treatment history given at the time of his admission indicated two prior admissions in 2009 and 2012 ranging between three and four weeks.  (R. 487).  His initial assessment noted a neat and appropriate appearance, a cooperative but shy, distant and embarrassed manner, appropriate thought processes, speech, and affect, and orientation to person, place, situation, and time.  (R. 492). Plaintiff reported enjoying disassembling and reassembling things.  (R. 500).  He stated he had very few friends but was a leader in his group.  (R. 501).  On July 1, 2017, Plaintiff discharged himself from Cove Forge against medical advice.  (R. 511, 543).

4

In addition, Plaintiff treated with Ryan Milloy, P.A.-C, at Berkshire Psychiatric & Behavioral Health Services, P.C. (Berkshire), during the relevant period.  An August 22, 2017 psychiatric evaluation noted Plaintiff's anxiety and "roller coaster" moods but also recorded that his depression had "decreased significantly."  (R. 394).  His September 2017 through June 2018 mental examinations show off-and-on mild distress, an occasionally guarded but normally cooperative attitude; a generally appropriate manner; an appropriate or blunted affect; fair to good insight and judgment; a depressed, anxious or calm mood; alertness; full orientation; normal concentration; and logical, intact and unimpaired thought processes, reality testing and decision making.  (R. 393, 566-75).

In an April 28, 2018 Psychiatric/Psychological Impairment Questionnaire, Mr. Milloy opined that Plaintiff was not a malingerer and that he had mood problems (depressed mood, persistent or generalized anxiety, irritable affect and feelings of guilt or worthlessness), behavioral and social problems (anhedonia, decreased energy, impulsive or damaging behavior, social withdrawn or isolation), attention, concentration and intellectual problems (difficulty thinking or concentrating, easy distractibility, flight of ideas), and decreased sleep, of which his depressed, labile, and unstable mood was the most frequent or severe symptom.  (R. 468-69).  Mr. Milloy noted that Plaintiff did not have a low I.Q.  (R. 469).  He found generally moderate limitations in understanding and memory, moderate-to-marked and marked limitations in concentration and persistence and social interactions, and moderate-to-marked limitations in adaptation.  (R. 469-70).  He predicted that Plaintiff's conditions would cause him to miss work more than three times per month.  (R. 471).

Plaintiff also had internal medicine and mental health consultative examinations.  On December 5, 2017, Plaintiff attended an internal medicine consultative examination with Craig Haytmanek, M.D., who reported normal examination results.  (R. 441-45).  At the examination,

Plaintiff described his activities of daily living (ADLs) as cleaning, laundry, shopping, childcare, showering/bathing, watching television, listening to the radio and socializing with friends.  (R. 442).  In the Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Haytmanek noted no limitations, except that Plaintiff could only "frequently" rather than "continuously" lift over 50 pounds.  (R. 448-57).

On the same day, he also attended a mental status consultative examination with Amanda Kochan-Dewey, Psy.D.  (R. 460).  At the examination, Plaintiff was cooperative; related adequately; performed counting and simple calculations demonstrating intact attention, concentration and memory; showed fair insight and judgment; and had an appropriate appearance, speech, and affect and coherent and goal directed thought processes.  (R. 462).  He reported ADLs of dressing, bathing, preparing food, cleaning, doing laundry, shopping, driving, watching television, listening to music and socializing with friends and family.  (R.462-63).  In the Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Kochan-Dewey determined that Plaintiff had no limitations due to his mental impairments.  (R. 464-66).

Later in December 2017, the state agency consultants provided their opinions.  Michael Lombard, M.D., opined that Plaintiff was limited to unskilled work but that he had a "heavy/very heavy" work capability.  (R. 98).  He found Plaintiff's statements regarding the limiting effects of his symptoms only partially consistent with the evidence in the file and considered Plaintiff's ADLs most informative regarding the extent of his limitations.  (R. 95).  Dennis Gold, Ph.D., opined that Plaintiff had no understanding and memory or sustained concentration and persistence limitations but that he did have social interaction limitations.  (R. 96).  These social limitations included moderate limitations in the ability to interact appropriately with the general public and in the ability to accept instructions and respond appropriately to criticism from supervisors but did not include significant limitations in the ability to ask simple questions or

request assistance or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*). Plaintiff's adaptation limitations included moderate limitations in the ability to set realistic goals or make plans independently of others (due to his need for prompts and reminders at times) and in the ability to respond appropriately in changes in the work setting but did not include significant limitations in the ability to be aware of normal hazards and take appropriate precautions or to travel in unfamiliar places or use public transportation. (R. 97). Dr. Gold also offered the following additional explanation:

> The Clm'ts ADL's and social skills are functional. He is able to communicate clearly and is able to self-advocate. Demonstrates adequate cognitive function and is capable of understanding, remembering and carrying out simple instructions at a minimum. Clm't is able to follow a routine and deal with the demands and changes of typical task oriented settings. Consequently, the Clm't is able to engage in simple, routine tasks despite the limitations from his impairments.

(*Id.*).

## B.   Non-Medical Evidence

The record also contains non-medical evidence. In a Third Party Adult Function Report dated November 12, 2017, Plaintiff's mother indicated that Plaintiff is anxious with strange people and crowds, has sleeping irregularities, and that he does not handle everyday life situations well. (R. 225-26). However, she indicated that his ADLs include personal care, caring for his girlfriend's two kids three times per week, making meals for himself daily and for his family as needed, doing household chores, hiking, walking, driving, shopping in stores, some money management, socializing with his family and best friend, and attending church. (R. 225-30). She checked boxes indicating that Plaintiff had difficulties with memory, completing tasks, concentration, understanding and following instructions. (R. 230). She stated that Plaintiff follows written instructions better than spoken ones but that he does not handle stress or changes in routine well. (*Id.*).

At the July 17, 2019 administrative hearing, Plaintiff stated that he completed a special education program in high school, that he lives with his girlfriend and that he has a driver's license, although he is not supposed to drive due to being on methadone.  (R. 50-51, 53).  He testified to ADLs of woodworking, hiking, attending church, doing household chores, grocery shopping and caring for three children.  (R. 52, 54, 61-62).  He indicated that he has problems with remembering things, depression, sleeping, energy, flashbacks, appetite, focusing and paying attention, and that he lacks concentration to read a book but that he can follow a movie from start to finish.  (R. 52-54, 56, 58, 60).  Plaintiff explained that he writes notes to remember appointments.  (R. 54).  He stated that his anxiety causes him chest tightness, shaking, breathing difficulties and pacing.  (R. 55).

### III.    ALJ'S DECISION

Following the administrative hearing held on July 17, 2019, the ALJ issued a decision in which he made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2.    The claimant has not engaged in substantial gainful activity since July 9, 2010, the alleged onset date.

3.    The claimant has the following severe impairments: bipolar affective disorder and unspecified anxiety disorder.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the

claimant has the residual functional capacity to perform a full range of work at all

exertional levels but with the following nonexertional limitations: no detailed

instructions and only occasional interaction with the public.

6.      The claimant has past work as a groundskeeper.

7.      The claimant was born on July 9, 1990 and was 20 years old, which is defined as

as a younger individual age 18-49, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in

English.

9.      The claimant is unable to perform his past relevant work.

10.     Transferability of job skills is not an issue because the claimant does not have past

relevant work.

11.     Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform.

12.     The claimant has not been under a disability, as defined in the Social Security

Act, from July 9, 2010, through the date of this decision.

(R. 15-24).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 24).


IV.   **LEGAL STANDARD**

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that she cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. §

1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work.  If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.     DISCUSSION

In his request for review, Plaintiff raises three claims: (1) the ALJ failed to evaluate properly the medical evidence in determining Plaintiff's mental residual functional capacity (RFC); (2) the ALJ failed to evaluate properly Plaintiff's subjective statements; and (3) the ALJ posed an inappropriate hypothetical question to the VE.  (Pl.'s Br., ECF No. 13, at 2-15).

### A.     Evaluation of Medical Evidence in Determining RFC

Residual functional capacity is "what an individual can still do despite [his] limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect [his] capacity to do work-related physical and mental activities." 20 C.F.R. § 404.1545(a)(1); *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted); *see also* SSR 83-10, 1983 WL 31251, at *7 (1983) (an RFC assessment determines "what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of [his] medically determinable impairment(s).").  Third Circuit law states that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527 (e)(1), 404.1546(c)).  When making the RFC determination, the ALJ must consider all relevant evidence, including medical opinions, account for all credibly established limitations, and "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)); *Booker v. Colvin*, No. 14-4984, 2017 WL 914911, at *10 (E.D. Pa. Mar. 7, 2017) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)).

11

Relevant evidence may include medical records and opinions, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. *See Fargnoli*, 247 F.3d at 41 (3d Cir. 2001); 20 C.F.R. § 404.1545(a). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(d)(1), 416.927(a)(1). Opinions that an individual is disabled "are not medical opinions, as described in paragraph (a)(1) of this section," and "we [the Commissioner] are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

"[M]edical opinions and prior administrative medical findings for claims filed on or after March 27, 2017[,]" are evaluated pursuant to 20 C.F.R. sections 404.1520c (SSDI claims) and 416.920c (SSI claims). To determine how persuasive a medical opinion is under these sections, the ALJ evaluates its supportability and consistency – the two most important factors – as well as the relationship between the source and the claimant, any relevant specialization of the source, and other facts, such as any familiarity of the source with other evidence in the claim or with the policies and evidentiary requirements of the disability program. *Id.* §§ 404.1520c(a), (b)(2), (c)(1)-(5), 416.920c(a), (b)(2), (c)(1)-(5).

### 1.      Dr. Jones

Plaintiff complains that the ALJ addressed the July 2019 Psychiatric/Psychological Impairment Questionnaire completed by Dr. Jones but disregarded his October 2014 Medical Source Statement of Ability to Do Work-Related Activities. (Pl.'s Br., ECF No. 13, at 3).

According to Plaintiff, the ALJ was required to account for this earlier report as well because the ALJ's consideration of Plaintiff's impairments dating back to July 2010, the time of alleged disability onset, "implicitly reopened" his prior application for SSI benefits denied in 2015.  (*Id.* at 1 n.3 (citations omitted)).  Instead, in Plaintiff's view, "the ALJ failed to provide any articulation of how persuasive he found the 2014 opinions from Dr. Jones based on the other evidence, much less light a path to allow a reviewing court to ascertain how the opinions were considered under the relevant factors in the Regulations."  (*Id.* at 4).

The Commissioner responds that the 2015 denial of Plaintiff's earlier application constitutes res judicata as to the disability period at issue therein and that, even if the ALJ had wanted to reopen the prior decision, he lacked jurisdiction to do so because none of the preconditions for reopening were present.  (Resp., ECF No. 14, at 3 (citations omitted)).  She further points out that in Dr. Jones's July 2019 letter he revised his earlier 2014 opinion, rendering it irrelevant: "Disability was discussed during a visit in 2014 but . . . I completed a form that did not identify any disabling physical issues/mental health issues."  (*Id.* (citing R. 619)).  In reply, Plaintiff repeats his position that "[a]pparently the ALJ found there was such good cause [to reopen Plaintiff's prior denied claim] here as he considered Plaintiff's disability back to 2010" and that the Commissioner is precluded from arguing otherwise because the ALJ did not explicitly find "that there was *not* good cause for reopening . . . ."  (Reply, ECF No. 15, at 2 (citing *Fargnoli*, 247 F.3d at 44 n.7) (emphasis added)).  He maintains that Dr. Jones's July 2019 letter is not a medical opinion under 20 C.F.R. § 404.1520b(c) because it constitutes only a conclusory legal statement that Plaintiff is not disabled rather than set forth his functional abilities.  (*Id.*).

Where, as here, less than four years has elapsed between notice of the initial disability determination and the new disability application, the determination may be reopened upon a

finding of good cause.  20 C.F.R. § 404.988(b); *see also* Reply, ECF No. 15, at 2; R. 113-14.

Bases for good cause include: (1) new and material evidence; (2) a clerical error in the

computation of benefits; or (3) an error clearly shown on the face of evidence considered in

making the determination or decision.  *Id.* § 404.989(a).  Plaintiff fails to identify which of these

bases is allegedly present here.  Instead, he contends that the ALJ considered his disabilities

related to his prior claim and cites cases for the proposition that an "ALJ implicitly reopen[s] [a]

prior application by discussing evidence related to the prior application for benefits," even if, as

here, he does "not mak[e] an explicit ruling that the earlier time period was not at issue because

of the doctrine of res judicata[.]"  (Pl.'s Br., ECF No. 13, at 1 n.1 (citing *Purter v. Heckler*, 771

F.2d 682, 695-96 (3d Cir. 1985); *Kaszer v. Massanari*, 40 F. App'x 686, 690 (3d Cir. 2002);

*Trotta v. Berryhill*, No. 17-cv-01556, 2018 WL 6737449, at *19-20 (E.D. Pa. Dec. 21, 2018))).

     As the Third Circuit has explained:

> When a claimant files successive applications, res judicata may be
> invoked by the agency to avoid entertaining each subsequent
> request based on the same issues. *See Purter v. Heckler*, 771 F.2d
> 682, 691 (3d Cir. 1985). Res judicata applies if the agency has
> "made a previous determination or decision under this subpart
> about your rights on the same facts and on the same issue or issues,
> and this previous determination or decision has become final by
> either administrative or judicial action." 20 C.F.R. § 404.957.
> However, the ALJ is not required to apply res judicata, and there
> are circumstances when a final determination may be reopened
> either upon the claimant's request or the agency's own initiative.
> *See* 20 C.F.R. § 404.988.
>
> . . . .
>
> Finally, a decision by the agency not to reopen a claim is not
> judicially reviewable. *See Califano v. Sanders*, 430 U.S. 99, 97
> S.Ct. 980, 51 L.Ed.2d 192 (1977); *Coup* [*v. Heckler*], 834 F.2d
> [313,] 317 [(3d Cir. 1987)]. But "we will examine the record to
> determine whether or not a reopening has occurred." *Coup*, 834
> F.2d at 317. We will find a reopening, and thus a waiver of res
> judicata, "where the administrative process does not address an
> earlier decision, but instead reviews the entire record in the new
> proceeding and reaches a decision on the merits." *Kane v. Heckler*,

> 776 F.2d 1130 (3d Cir. 1985). We may find after looking at the
> administrative record than the reopening has been either explicit or
> de facto. *Coup*, 834 F.2d at 317.

*Kaszer*, 40 F. App'x at 690.

After reviewing the record in this case, the Court does not conclude that the ALJ

reopened Plaintiff's prior claim, such that the ALJ was required to address Dr. Jones's 2014

opinion.  The ALJ's decision gives no indication that he purported to review "the entire record,"

including evidence relevant to the prior application.  *Id.*  In fact, the Commissioner makes no

reference to any evidence dated prior to the February 20, 2015 denial,[4] nor does Plaintiff point to

any such evidence considered by the ALJ.  In fact, the ALJ did nothing more than reference July

9, 2010, as the date from which Plaintiff claimed he became disabled.  But simply

acknowledging that a claimant seeks benefits from a point that would include a period contained

within a prior denied application does not reopen that application.

The Commissioner is not foreclosed from asserting res judicata under *Fargnoli* on the

basis that the ALJ did not explicitly reference the principle in his decision.  The footnote from

that case cited by Plaintiff merely states that a district court may not attempt to correct an ALJ's

unsupported decision by relying on medical records not mentioned by the ALJ because "[t]he

grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based."  *Fargnoli*, 247 F.3d at 44 n.7 (quoting *SEC v. Chenery

Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)).  However, as noted here, the test to

determine whether res judicata applies or whether an earlier disability determination has instead

---

[4]  The ALJ refers to the Psychiatric/Psychosocial Impairment Questionnaire completed
by Dr. Jones, which references Plaintiff's earlier request (before the first denial) to fill out
disability paperwork for him, but the Questionnaire itself is dated July 11, 2019.  (R. 22; see also
R. 622 ("disability was applied for in 2014 – I could not complete the papers favorably for him.
[D]isability was not mentioned again until May 2019.")).

been reopened is whether the ALJ does not address the earlier decision but nonetheless reviews

the full record and reaches a merits decision in the subsequent proceeding.  *Kaszer*, 40 F. App'x

at 60 (quoting *Kane*, 776 F.2d at 1130).

Accordingly, the Court finds that the ALJ did not err by failing to discuss Dr. Jones's

2014 medical opinion related to Plaintiff's previously denied application.[5]

### 2.    Physician Assistant Milloy

After summarizing Mr. Milloy's opinion regarding Plaintiff's mental limitations, the ALJ

explained his rejection of it: "This opinion is not persuasive as it is not supported by claimant's

treatment notes and other medical records, nor is it consistent with these records or claimant's

own descriptions as to his impairments."  (R. 21-22).  Plaintiff contends that this explanation is

inadequate under 20 C.F.R. Sections 404.1520c and 416.920c because it fails to articulate how

the ALJ considered the supportability and consistency of the opinion, including how the

longitudinal psychiatric treatment notes are inconsistent with it.  (Pl.'s Br., ECF No. 13, at 6, 8).

He claims that the ALJ also failed to consider the factors of length, frequency and nature of

treatment and observes that Mr. Milloy treated Plaintiff "regularly over a long period" with

medication and therapy.  (*Id.* at 8).  He suggests that as the treating specialist, Mr. Milloy offered

an opinion that was "more relevant" and thus "more persuasive" and asserts that the ALJ erred in

"wholly disregarding" it.[6]  (*Id.* at 6).  He argues that observational assessments like those made

---

[5]  Because the Court finds that the ALJ did not err in disregarding Dr. Jones's 2014 opinion, it need not consider whether the doctor's 2019 letter constitutes a separate basis to ignore it.

[6]  Nonetheless, Plaintiff acknowledges that the new regulations no longer assign controlling weight to treating source opinions.  (Pl.'s Br., ECF No. 13, at 9 n.1; *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *Id.* § 416.920c(a) (same)).

by Mr. Milloy are the "gold standard" for evaluating the severity of mental impairments.  (*Id.* at 7 (citing cases from the United States Supreme Court and Sixth, Seventh, and Tenth Circuit Courts of Appeals)).

In response, the Commissioner asserts that the ALJ rightfully found Mr. Milloy's checked-box assessment of Plaintiff's mental functioning unpersuasive because the record contains no corroborating treatment notes and because the assessment conflicted with the other evidence in the record, including Mr. Milloy's own notes showing normal mental functioning. (Resp., ECF No. 14, at 4-5).  The Commissioner points out that "the gravamen of a disability claim . . . is whether the record establishes disabling function limitations," not simply whether the claimant has an impairment.  (*Id.* at 5 (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990))).

20 C.F.R. Sections 404.1520c and 416.920c state: "Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  Accordingly, the ALJ must explain how he or she considered "the most important factors" of supportability and consistency and "may, but [is] not required to," explain how length of treatment, frequency of examinations and purpose of treatment were considered.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ fulfilled this requirement here.  Although he did not address how these latter three factors were considered, he explained that Mr. Milloy's opinion was supported by neither Plaintiff's treatment notes with Mr. Milloy nor by the record evidence from the other medical providers and consultants.  (R. 21-22).  He also addressed the consistency factor, explaining that Mr. Milloy's opinion was not consistent either with this other medical evidence of record or with Plaintiff's

17

own descriptions of his mental impairments.  (*Id.*).  Thus, contrary to Plaintiff's allegation that

the ALJ "wholly disregarded" Mr. Milloy's opinion, the ALJ fulfilled his obligations by

identifying and discussing the opinion and citing its lack of supportability and consistency,

thereby "giv[ing] some indication of the evidence which he rejects and his reason(s) for

discounting such evidence." *Ramirez*, 372 F.3d at 552.

Accordingly, the Court finds that the ALJ adequately explained the reasons that he found

Mr. Milloy's opinion not persuasive.

### 3.    Dr. Gold

Plaintiff complains that instead of crediting the opinions of Mr. Milloy, the ALJ instead

found "generally persuasive" Dr. Gold's opinions, even though it has been "the rule in this

Circuit for at least the past 35 years that opinions from non-examining sources, standing alone,

are not substantial evidence in the face of well-supported opinions from treating sources."  (Pl.'s

Br., ECF No. 13, at 9 (citing cases from the Third Circuit Court of Appeals)).  He claims that the

ALJ did not explain how Dr. Gold's opinion is better supported and more consistent with the

evidence than Mr. Milloy's opinion and that "no good explanation" exists for crediting the

former over the latter.  (*Id.* at 8-9).  He also takes issue with the fact that Dr. Gold issued his

opinion 19 months prior to the ALJ's decision and observes that the Regulations state that

subsequently submitted evidence could make such opinions "more or less persuasive."  (*Id.*

(quoting 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5))).  The Commissioner counters that the

ALJ properly found Dr. Gold's opinion consistent with the other evidence in the record

notwithstanding its timing.  (Resp., ECF No. 14, at 5).  She notes that the Third Circuit has

observed that "[b]ecause state agency review precedes ALJ review, there is always some time

lapse between the consultant's report and the ALJ hearing and decision."[7]  *Chandler v. Comm'r*

---

[7]  The Commissioner further contends that Dr. Gold's opinion finding moderate but no

*of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

The ALJ "must consider" prior administrative medical findings and medical evidence from State agency medical and psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 1513a(b)(1). Here, contrary to Plaintiff's assertions, the ALJ addressed the supportability and consistency of Dr. Gold's opinion vis-à-vis that of Mr. Milloy when he found Dr. Gold's opinion both supported by and consistent with the results of Plaintiff's mental status examinations and his descriptions of his ADLs but found Mr. Milloy's opinion unsupported by his treatment notes for Plaintiff as well as the other medical evidence and inconsistent with this evidence and Plaintiff's description of his impairments. (R. 21-22). Because the ALJ found that Mr. Milloy's opinion was not "well-supported," he was free to credit Dr. Gold's opinion over it. (*See* Pl.'s Br., ECF No. 13, at 9). As for the timing of Dr. Gold's opinion, Plaintiff does not identify what subsequently submitted evidence rendered it "more or less persuasive," although presumably he asserts that Mr. Milloy's April 2018 Psychiatric/Psychological Impairment Questionnaire diminished the persuasiveness of Dr. Gold's December 2017 report. (*See* R. 468-71). However:

> [t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96–6p (July 2, 1996) (emphasis added). The ALJ reached no such conclusion in this case.

---

disabling limitations is consistent with Dr. Kochan-Dewey's opinion that Plaintiff had no functional limitations related to any mental impairment. (Resp., ECF No. 14, at 4). Plaintiff replies that it is "particularly galling" that the Commissioner would attempt to invoke an opinion that the ALJ found "not persuasive." (Reply, ECF No. 15, at 3). Because the ALJ found this opinion not persuasive, the Court does not consider whether it supports or is consistent with Dr. Gold's opinion.

*Chandler*, 667 F.3d at 361; *see also Ladd v. Astrue*, No. 12-4553, 2014 WL 2011638, at *1 n.2 (E.D. Pa. May 16, 2014) (an assessment is "not rendered less weighty because it does not consider medical records that did not exist at the time the assessment was made").

Accordingly, the ALJ did not err when he credited Dr. Gold's opinion over Mr. Milloy's opinion.

### B.    Subjective Statements

As part of an RFC analysis, the ALJ must determine the credibility of a claimant's subjective complaints by evaluating the intensity and persistence of the symptoms to determine the extent to which those symptoms limit the individual's ability to work.  20 C.F.R. §§ 404.1529(c), 416.929(c).  Under Social Security Ruling 16-3p, the ALJ must follow a two-step process in evaluating the plaintiff's subjective symptoms: (1) determine if there is an underlying medically determinable physical or mental impairment, shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the plaintiff's pain or symptoms; then (2) evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the plaintiff's functioning.  SSR 16-3p, 2016 WL 1119029, at *4-8 (Oct. 25, 2017).  In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must consider relevant factors such as the objective medical evidence, evidence from medical sources, treatment course and effectiveness, daily activities, and consistency of the plaintiff's statements with the other evidence of record.  *Id.*

An ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence."  *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)).  If the complaints "are not fully credible," the ALJ "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints . . . ."

*Weber v. Massanari*, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001).  However, "a[n] ALJ must give great weight to a claimant's subjective testimony . . . when this testimony is supported by competent medical evidence."  *Schaudeck*, 181 F.3d at 433.

Plaintiff claims that although the ALJ found his subjective statements "not entirely consistent" with the record evidence "for the reasons explained in [ ]his decision," the ALJ never set forth these reasons or adequately addressed the factors listed in SSR 16-3p.  (Pl.'s Br., ECF No. 13, at 12).  He dismisses the ALJ's credibility determination as "meaningless boilerplate." (*Id.* (quoting *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010) (additional citations omitted))).  He asserts that his testimony regarding his symptoms, limitations, ADLs and lack of response to treatment is consistent with the other record evidence.  (*Id.*).

In response, the Commissioner maintains that the ALJ properly evaluated Plaintiff's subjective complaints.  (Resp., ECF No. 14, at 5-6).  She observes that the ALJ "thoroughly recount[ed] Plaintiff's testimony, including his claims that his anxiety caused deficits in attention and concentration and prevented him from leaving his house," but then explained that this testimony was inconsistent with his medical record showing no evidence of any such deficits. (*Id.*).  She also notes that the ALJ considered Plaintiff's ADLs, including his romantic relationship, care for young children, socialization with friends and driving and shopping without difficulty.  (*Id.* at 6).  She points out that the ALJ gave Plaintiff "the benefit of the doubt" by limiting him to simple work with limited public interaction, even though the ALJ concluded that the record contained no evidence of difficulty with attention or concentration.  (*Id.*).  The Commissioner submits that it was within the ALJ's discretion as the factfinder to discount the testimony he found inconsistent with the record and that he was not required "to find an individual disabled based on alleged symptoms alone."  (*Id.* (quoting SSR 16-3p)).

Plaintiff replies that "[l]egal analysis cannot simply be 'dressed up with a summary of the

evidence'" and that the ALJ did not explain how Plaintiff's treatment notes and ADLs contradict

his statements about his symptoms and resulting limitations.  (Reply, ECF No. 15, at 3 (quoting

*Root v. Heckler*, 618 F. Supp. 76, 77 (D. Del. 1985))).  He insists that treatment records that

failed to describe Plaintiff's limitations are not evidence that they do not exist because there is a

"distinction between doctor's notes for purposes of treatment and that doctor's ultimate opinion

on the claimant's ability to work."  (*Id.* at 3-4 (quoting *Brownawell v. Comm'r of Soc. Sec.*, 554

F.3d 352, 357 (3d Cir. 2008))).  Regarding his ADLs, he posits that "an individual need not be in

a vegetive state to be found disabled" and points out that the regulations contemplate that an

individual may be able to perform some ADLs and yet may be mentally disabled.  (*Id.* at 4

(citing 20 C.F.R. Pt. 404, Appendix 1 of Subpart P § 12.00(D)(3)(a))).  He maintains that none of

his ADLs contradict his self-described symptoms or limitations or indicate that he can work full

time in a competitive environment.  (*Id.* at 5).

   Contrary to Plaintiff's assertions, the ALJ did not merely summarize the evidence and

base his determination upon treatment records that, as one would expect, did not describe

Plaintiff's limitations.  Instead, he contrasted Plaintiff's subjective statements with the medical

and non-medical evidence that was inconsistent with "the intensity, persistence, and limiting

effects" of Plaintiff's symptoms, including, as applicable, evidence of the factors listed in SSR

16-3P.  *See* SSR 16-3P(2)(d)(1)-(7).  As the ALJ noted, although Plaintiff consistently

complained of anxiety and depression to multiple medical providers throughout the relevant

period, his mental status examinations were generally otherwise normal, and his visits with these

providers show that he was consistently oriented, alert, coherent, goal-directed and logical with

fair or normal insight and judgment and intact reality-testing, decision-making, memory,

attention and concentration, but generally without anxiety attacks, flashbacks or paranoia.  (R.

20-21).  The ALJ observed that Plaintiff received mental health treatment from his primary care

physician, a physician's assistant at a psychiatric and behavioral services practice, and a dual diagnosis mental health and substance abuse program and that Plaintiff reported taking methadone.  (*Id.*).  The ALJ also highlighted that Plaintiff engaged in childcare for three children, house cleaning, hiking, woodworking, laundry, personal care, watching television, listening to the radio, socializing with friends, maintaining a romantic relationship with his girlfriend, shopping and money management.  (*Id.*).  He pointed out that Plaintiff was able to drive 40 miles alone to his consultative psychological examination.  (R. 21).

Accordingly, the ALJ relied upon Plaintiff's treatment records to discount his subjective symptoms because they were inconsistent, not because they failed to address Plaintiff's functional deficits or alleged problems leaving his home.  (Reply, ECF No. 15, at 3-4).  Similarly, the ALJ discounted Plaintiff's subjective complaints because they were not consistent with his ADLs.  *See, e.g., Weimer v. Astrue*, No. 02:08-cv-0412, 2009 WL 563932, at *4 (W.D. Pa. Mar. 5, 2009) (the plaintiff was not disabled where he watched television, read the newspaper, socialized with relatives and friends, occasionally dined at restaurants, surfed the internet, and performed household chores and repairs).  Notably, Plaintiff appears to engage in ADLs beyond those referenced in his cited authorities.  (*Compare* R. 20-21 (noting hiking, woodworking, socialization, maintenance of romantic relationship childcare for three children including a one-year-old,), *with Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (limited household chores, participation in group therapy and care for a 13-year-old), *and Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) ("What we are left with is a rejection of medically credited symptomatology based solely on the administrative law judge's observation of the claimant at the hearing, and claimant's testimony that he took care of his personal needs, performed limited household chores, and occasionally went to church. That is not permissible.") (citation omitted)).

In light of the substantial evidence inconsistent with Plaintiff's subjective statements regarding the intensity, persistence and limiting effects of his symptoms, the ALJ's finding that such statements "are not entirely consistent" with the record cannot be dismissed as "meaningless boilerplate." (R. 20; Pl.'s Br., ECF No. 13, at 12 (citation omitted)). The ALJ did not error when he discounted these inconsistent statements.

### C.     Hypothetical to the VE

In steps four and five of a disability determination, a VE "may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 416.960(b)(2). The purpose of posing a hypothetical is to determine whether a claimant has the RFC to perform either the claimant's previous work or any work that exists in the national economy. *Ramirez*, 372 F.3d at 549. The ALJ's hypothetical "must accurately convey to the [VE] all of a claimant's credibly established limitations" in order to rely upon the VE's testimony as substantial evidence. *Rutherford*, 399 F.3d at 554.

Plaintiff complains that the ALJ's hypothetical to the VE only limited him to work not involving detailed instructions and with no more than occasional contact with the public, even though the ALJ found that he had moderate limitations in interacting with others, adapting or managing himself, and persisting, concentrating and maintaining pace. (Pl.'s Br., ECF No. 13, at 13-14). Plaintiff contends that under *Ramirez* "a restriction to simple tasks 'do[es] not adequately convey all [such] limitations'" because it fails to address his difficulties with persistence, prolonged concentration or maintaining pace throughout a workday or workweek. (*Id.* at 14 (quoting 372 F.3d at 554)). He argues that the purported error was not harmless in

light of the VE's testimony that an individual who misses work more than once a month or who

is off task more than ten percent of the day cannot maintain competitive employment.  (*Id.*).

Anticipating the Commissioner's response, Plaintiff acknowledges the Third Circuit's holding in

*Hess v. Commissioner of Social Security*¸931 F.3d 198 (3d Cir. 2019) that a restriction to simple

tasks and decisions may account for moderate limitations in persistence, concentration and

maintaining pace, but he attempts to distinguish that case on the basis that the ALJ there offered

"a valid explanation" for how the restriction to simple work accounts for the limitations by

relying on medical opinions that the claimant could perform simple tasks despite them.  (Pl.'s

Br., ECF No. 13, at 14 n.1).  He insists that the ALJ in this case did not rely on any such medical

opinions and that no valid explanation exists for how the restriction accounts for his limitations

because no medical source opined that he is limited to simple work.  (*Id.*).

Further, Plaintiff argues that the ALJ's hypothetical to the VE failed to account for his

finding that he has moderate limitations in adapting and managing himself.  According to

Plaintiff, "[a]t least one District Court has found it is reversible error not to describe limitations

in a claimant's ability to adapt and manage herself in the hypothetical to the VE."  (*Id.* at 15

(quoting *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 360-62 (E.D. Pa. 2018))).  Plaintiff protests

that the ALJ did not describe any limitations in his ability to adapt to changes in work setting or

routine, but that his moderate limitation in this area is not consistent with a finding of no

limitations in mental functioning.[8]  (*Id.*).

The Commissioner responds that *Hess* "clarified that the regulations do not compel the

ALJ to include particular limitations in the residual functional capacity assessment whenever a

---

[8]  Moreover, Plaintiff posits that the hypothetical to the VE was improper because the RFC "is not supported by substantial evidence, as detailed in Point I and II above . . . ."  (Pl.'s Br., ECF No. 13, at 13).  However, the Court has already addressed the substance of this argument in Sections V.A-B, *supra*.

claimant has moderate difficulties in the various functional domains."  (Resp., ECF No. 14, at 6).
She asserts that "the manner in which an ALJ may properly account for a claimant's moderate
difficulties in concentration, persistence, or pace is fact-specific . . . ."  (*Id.* at 6-7 (citing *Hess*,
931 F.3d at 210-14; *Biestek v. Berryhill*, 139 S.Ct. 1148, 1157 (2019))).  She agrees that a "valid
explanation" is required but observes that Plaintiff ignores the following from the ALJ decision:

> In sum, the above residual functional capacity assessment is
> supported by the treatment records which consistently indicate
> aberrations of mood, but no difficulty with orientation,
> concentration, memory, cognition or comprehension.  The
> claimant's subjective symptoms related to anxiety have been
> accounted for in limiting the claimant to non-detailed work with
> limited public contact.  There is no evidence of ongoing symptoms,
> mental or physical, that would be consistent with additional
> limitations.

(*Id.* at 7 (citing R. 22)).

    In reply, Plaintiff repeats the argument that *Hess* is distinguishable because that case
involved medical opinions that the claimant could perform simple tasks, whereas this record
includes no "medical opinions that found the claimant is only limited to no detailed work
because of his moderate limitations in concentration, persistence, or pace."  (Reply, ECF No. 15,
at 5).  He highlights the ALJ's finding that Plaintiff's anxiety and depression are "likely to affect
the claimant's ability to maintain concentration or persist on task for long periods."  (*Id.*).  He
observes that despite this finding, the ALJ did not specifically direct the VE "to consider that
[he] has problems concentrating and persisting on tasks for periods of time."  (*Id.*).

    In *Ramirez*, the Court explained that findings of limitation in the broad functional areas,
though not an RFC assessment, play a role in steps four and five, and thus need to be accounted
for in the RFC and hypothetical to the VE.  372 F.3d at 555.  In that case the ALJ limited the
claimant to "simple one or two step tasks," but the Third Circuit held that limiting the claimant to
one-to-two step tasks was not sufficient to account for the ALJ's observation at steps two and

three that Ramirez "*often* suffered from deficiencies in concentration, persistence, or pace." *Id.*

at 554 (emphasis in original).  It explained:

> Most importantly, this limitation [to simple tasks] does not take
> into account deficiencies in pace. Many employers require a
> certain output level from their employees over a given amount of
> time, and an individual with deficiencies in pace might be able to
> perform simple tasks, but not over an extended period of time. If
> Ramirez often suffers deficiencies in pace and this had been
> included in the hypothetical, vocational expert Stratton may have
> changed her answer as to whether there were jobs in the local or
> national economy that Ramirez could perform.

*Id.*

> However, as further explained in *Hess*:

> *Ramirez* did not hold that there is any categorical prohibition
> against using a "simple tasks" limitation after an ALJ has found
> that a claimant "often"[9] faces difficulties in "concentration,
> persistence, or pace."  Rather, a "simple tasks" limitation is
> acceptable after such a finding, as long as the ALJ offers a valid
> explanation for it.

931 F.3d at 212; *see also Ramirez*, 372 F.3d at 554 ("Of course, there may be a valid explanation

for this omission [regarding the claimant's deficiencies occurring 'often'] from the ALJ's

hypothetical.").  Ultimately, "the outcome of each case turn[s] on its particular facts."  *Hess*, 931

F.3d at 212.  The "'valid explanation' approach" is "fact-specific."  *Id.*

Plaintiff maintains that the explanation offered by the ALJ for imposing a "simple tasks"

restriction is invalid because, unlike in *Hess*, the record contains no evidence that Plaintiff can

perform such tasks notwithstanding his limitations.  (Reply, ECF No. 15, at 5; *see also Hess*, 931

F.3d at 214 (referencing "opinion evidence showing that Hess could do simple work")).  But

Plaintiff ignores the report from Dr. Gold, summarized by the ALJ in relevant part as follows:

---

[9]  The Court also noted that, "due to a change in the regulatory rating scale," difficulties
previously described as arising "often" are now described as "moderate" difficulties.  *Hess*, 931
F.3d at 212 (citing 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4)).

The evaluator went on to opine that the claimant's activities of daily living and social skills are functional.  He is able to communicate clearly and is able to self-advocate.  Demonstrates adequate cognitive functioning and is capable of understanding, remembering and carrying out simple instructions at a minimum. Claimant is able to follow a routine and deal with demands and changes of typical task oriented settings.  ***Consequently, the claimant is able to engage in simple, routine tasks despite the limitations from his impairments.***

(R. 21 (emphasis added)).

Additionally, the existence of opinion evidence demonstrating that Hess could perform simple tasks was not the sole basis for the Third Circuit's determination that the ALJ had offered a "valid explanation" for such a restriction.  The court also highlighted the ALJ's references in her analysis of the record to Hess's "mental status examinations and reports that revealed that Hess could function effectively . . . and Hess's activities of daily living." *Hess*, 931 F.3d at 214. In addition, the court observed that the ALJ had found that Hess's "progress notes from treating and examining sources generally indicate no serious problems in this area of functioning, reporting that [Hess] could perform simple calculations, was fully oriented, and had intact remote/recent memory." *Id.*

The ALJ in this case made similar findings.  He repeatedly pointed out Plaintiff's "normal" mental status examinations.  (R. 20-21 (referencing normal mental status examinations at Berkshire, Cove Forge and his consultative psychological examination)).  As noted, he emphasized Plaintiff's ADLs, which included such tasks as childcare for three children (including a one-year-old), house cleaning, woodworking, laundry and shopping.  (R. 20-21). And he observed that Plaintiff's progress notes consistently showed full orientation, alertness, logical thought processes, fair or normal insight and judgment, and intact reality testing, decision making, attention, concentration, and memory.  (*Id.* at 20-21).  As the Commissioner observes above, the ALJ then explained how this evidence supported the RFC assessment, including the

28

effect of Plaintiff's anxiety on his ability to sustain concentration and persistence.  (*See* R. 22

("The claimant's subjective symptoms related to anxiety have been accounted for in limiting the

claimant to non-detailed work with limited public contact.")).  Applying the requisite fact-

specific analysis, the Court is satisfied that the ALJ provided a valid explanation for finding that

Plaintiff is capable of performing simple tasks.

Finally, Plaintiff insists that the ALJ committed reversible error by failing to include his

moderate limitations in his ability to adapt and manage himself in the hypothetical posed to the

VE.  (Reply, ECF No. 13, at 15).  However, the above-described restrictions on Plaintiff's ability

to perform detailed work or have contact with others sufficiently conveyed to the VE his

moderate limitations in these areas as well, in addition to his limitations in concentration,

persistence and maintaining pace.  *See Stancavage v. Saul*, 469 F. Supp. 3d 311, 340-41 (M.D.

Pa. 2020) (restriction to routine, repetitive work not requiring detailed instructions or more than

occasional contact with others accounted for moderate limitations in adapting and managing

self); *see also Nelson v. Saul*, No. 4:18-cv-163-D, 2019 WL 4748028, at *6 (E.D.N.C. Aug. 29,

2019) (restriction to occasional changes in work setting, no interaction with public and

occasional interaction with coworkers accounted for moderate limitations in adapting and

managing self); *Rayonda P. v. Comm'r, Soc. Sec. Admin.*, No. 7:18-cv-190, 2019 WL 3242069,

at *5 (W.D. Va. July 18, 2019) (restriction to occasional changes in work setting and "only

frequent" contact with public and coworkers accounted for moderate limitations in adapting and

managing self).  Indeed, courts have found restrictions like the ones determined by the ALJ in

this case sufficient to account for even marked limitations in managing and adapting oneself.

*See Stevens v. Comm'r of Soc. Sec.*, No. 1:18-cv-1082-JLT, 2020 WL 1324497, at *10-11 (E.D.

Cal. Mar. 20, 2020); *Hill v. Comm'r of Soc. Sec.*, No. 18-cv-1161, 2020 WL 836386, at *4

(W.D.N.Y. Feb. 20, 2020).

29

Accordingly, the hypothetical the ALJ posed to the VE adequately accounted for Plaintiff's moderate limitations in concentration, persistence and maintaining pace, as well as in adapting and managing himself.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**.  An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge